THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>v.<br><br>R. JOHN FORTE, KIMBERLIE D. FORTE, KOLSCH FAMILY TRUST, by and through Trustees GORDON KOLSCH and WADIA KOLSCH<br><br>                   Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [39] PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND [40] DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-00200-DBB<br><br>District Judge David Barlow |

Plaintiff filed an action against the Fortes regarding their income and tax liabilities involving the 2005 and 2007 sales of their homes. The Fortes claim they are entitled to certain exclusions from their income that would reduce their tax liabilities. Before the court are the parties' cross-motions for partial summary judgment.[1] The two issues before the court in these motions are: (1) whether the Fortes are entitled to exclude from their gross income part of the gain from the 2007 sale of their home, and (2) whether the Fortes are entitled to reduce the amount of taxable gain realized on the 2005 sale of a different home by the amount paid for furnishings that were sold with the home.

---

[1] *See* Plaintiff's Motion for Partial Summary Judgment (Pl. Motion), ECF No. 39, filed January 29, 2021; Defendants' Motion for Partial Summary Judgment (Def. Motion), ECF No. 40, filed January 29, 2021.

Having considered the briefing and the relevant law, the court concludes the motions may be resolved without oral argument.[2] The court finds that there are genuine issues of material fact about whether the Fortes sold their home based on "unforeseen circumstances" and DENIES both motions on that issue. The court also DENIES Defendants' Motion as to the claim for a reduction of income from a gain on the 2005 sale.

**FACTS**

The Fortes purchased their home on Windsong Lane (Windsong Home) in 2000 and lived there until 2005.[3] Between October and December 2000, they spent $144,150.02 on furniture for the Windsong Home.[4] In June 2003, the Fortes purchased a lot on Snow Forest Cove with the intent to build a home.[5] The Fortes obtained a loan and began constructing a home (Snow Forest Home) in September 2004.[6] The Fortes sold the Windsong Home in September 2005.[7] The Fortes did not get paid the full contractual amount from the buyer of the Windsong Home.[8] Specifically, the Fortes were unable to fully collect on seller finance notes in connection with the Windsong Home sale.[9]

---

[2] *See* DUCivR 7-1(f).

[3] John Forte Deposition (Forte Dep.), ECF No. 39-1 at 16:22–17:3, 32:25–33:2.

[4] Forte Dep. at 17:20–18:11; Invoices, ECF No. 40-2 at 1–10.

[5] Forte Dep. at 24:4-22; 26:18–27:17; *see also* Special Warranty Deed, ECF No. 40-3 at 35.

[6] Forte Dep. at 28:11–13, 29;14-30:12.

[7] *Id.* at 32:25–33:2.

[8] *Id.* at 33:3–34:9, 39:20–22, 40:9–12, 42:6–7, 58:23–59:16.

[9] *Id.; see also id.* at 37:22–38:1.

During 2005, the Fortes were experiencing financial stress.[10] The Fortes moved into the Snow Forest Home in December 2005.[11] On or about December 21, 2005, the Fortes purchased the lot adjacent to their home (Lot 3) for $435,000 with the intent to retain a scenic view from their newly constructed Snow Forest Home.[12]

When the Fortes moved into the Snow Forest Home, they had a loan with a high interest rate.[13] They could not refinance the loan due to their bad credit, so they entered into an agreement whereby a "friend of a friend" (Edvik) helped refinance the loan by borrowing in his name.[14] In January 2006, the Fortes executed a warranty deed conveying title to the Snow Forest Home to Edvik, which was recorded.[15] A trust deed naming Edvik as Trustor and the Fortes as beneficiaries was also recorded.[16] Edvik obtained a loan for $1.4 million.[17] Edvik kept $20,000 of the proceeds, and the remainder was used to pay off the Fortes' loans.[18] The Fortes made the mortgage payments on the new loan.[19] In April 2006, the Fortes also executed a warranty deed for Lot 3 in favor of Edvik.[20]

---

[10] *Id.* at 32:1–34:9, 35:11–16, 39:15–40:12, 42:3–19, 57:18–59:16.

[11] *Id.* at 34:10–12.

[12] *Id.* at 28:14–29:17; Settlement Statement, ECF No. 39-1 at 28–30.

[13] Forte Dep. at 34:21–35:1.

[14] *Id.* at 37:8–41:20, 46:7–17.

[15] Warranty Deed, ECF No. 39-2 at 14; *see also* Deed, ECF No. 40-5 at 2.

[16] All-Inclusive Trust Deed, ECF No. 40-5 at 4–7.

[17] Disclosure Statement, ECF No. 40-5 at 9–11.

[18] Forte Dep. at 40:23; Matthew Edvik Deposition (Edvik Dep.), ECF No. 40-4 at 20:19–24.

[19] Forte Dep. at 77:11–19.

[20] Warranty Deed, ECF No. 39-2 at 27.

In February 2007, Edvik signed a quitclaim deed conveying title of the Snow Forest Home to the Fortes.[21] By May 2007, the loan on the Snow Forest Home in Edvik's name was in default.[22] In August 2007, the Fortes transferred title to the Snow Forest Home to an LLC they owned.[23] It is disputed if and to what extent the Fortes' financial situation was worsening in the fall of 2007.[24] But it is undisputed that the Fortes sold the Snow Forest Home and Lot 3 for $2.7 million and moved out in September 2007.[25]

After the instant case was filed, an IRS revenue agent (Carlile) was assigned to review the Fortes' previous tax assessment at the request of the Fortes.[26] Carlile's report allowed $144,000 in additional basis to the Fortes for the furniture sold with the Windsong Home.[27] The report also determined that the Fortes qualified to exclude $458,333 of gain on the 2007 sale of the Snow Forest Home.[28]

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] A factual dispute is genuine

---

[21] Quit-Claim Deed, ECF No. 39-2 at 29.

[22] Edvik Dep. at 27:4–20; *see also* Notice of Default, ECF No. 39-2 at 31.

[23] Quit-Claim Deed, ECF No. 39-2 at 33; *see also* Forte Dep. at 61:2–62:6.

[24] United States' Response to Defendants' Motion for Partial Summary Judgment (Pl. Opposition), ECF No. 43 at 3, ¶ 37, filed March 12, 2021; *see also* Reply in Further Support of Defendants' Motion for Partial Summary Judgment (Def. Reply), ECF No. 49 at 3–4, filed April 9, 2021.

[25] Settlement Statement, ECF No. 39-2 at 37–38; Forte Dep. at 63:24–65:3.

[26] John Carlile Deposition (Carlile Dep.), ECF No. 40-3 at 10:18-11:16; 12:25–13:18; *see also* Pl. Opposition at ¶ 5 (disputing only that the fact is "not material" but not that Carlile was assigned to review specific tax issues).

[27] Income Tax Discrepancy Adjustments (Carlile Report), ECF No. 40-3 at 21; *see also* Pl. Opposition at ¶ 7 (disputing only that the fact is "not material" but not that Carlile was assigned to review specific tax issues).

[28] Carlile Report, ECF No. 40-3 at 23; *see also* Pl. Opposition at ¶ 39 (disputing only that the fact is "not material" but not that Carlile was assigned to review specific tax issues).

[29] Fed. R. Civ. P. 56(a).

when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[30] In determining whether there is a genuine dispute of material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[31] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[32]

Furthermore, "exclusions from income are narrowly construed."[33] Exclusions "are not to be implied; they must be unambiguously proved."[34] "Taxpayers therefore must clearly bring themselves within the terms of the statutes they point to as granting an exemption."[35]

## DISCUSSION

**A. The Court Denies Both Motions as to the Exclusion of Income from the 2007 Sale of the Snow Forest Home.**

Both motions ask the court to determine whether the Fortes are entitled to exclude from their income gain from the 2007 sale of the Snow Forest Home. 26 U.S.C. § 121(a) provides that "[g]ross income shall not include gain from the sale or exchange or property if, during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 or more years." It is

---

[30] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[31] *Id.*

[32] *Id.* at 670–71.

[33] *Umbach v. Comm'r of Internal Revenue Serv.*, 83 F. App'x 274, 277 (10th Cir. 2003) (citing *Comm'r of Internal Revenue Serv.*, 515 U.S. 323 (1995)).

[34] *Umbach*, 83 F. App'x at 277.

[35] *Id.*

undisputed that the Fortes did not own <u>and</u> use the Snow Forest Home for a period of two or more years, so they do not qualify for the full exclusion provided by statute.[36]

However, the Fortes may be entitled to a partial exclusion for the period they did own and use the Snow Forest home if they sold the home due to "unforeseen circumstances."[37] Unforeseen circumstances means that "the primary reason for the sale or exchange is the occurrence of an event that the taxpayer *could not reasonably have anticipated before purchasing and occupying* the residence."[38] A sale "is deemed to be by reason of unforeseen circumstances…if any of the events specified…*occur during the period* of the taxpayer's ownership and use of the residence as the taxpayer's principal residence.[39] Examples of "unforeseen circumstances include: (1) "involuntary conversion of the residence," (2) "natural or man-made disasters or acts of war or terrorism resulting in a casualty to the residence," (3) death of a qualified individual, (4) "cessation of employment as a result of which the qualified individual is eligible for unemployment compensation," (5) "change in employment or self-employment that results in the taxpayer's inability to pay housing costs," (6) legal separation or divorce, and (7) "multiple births resulting from the same pregnancy."[40]

   a. **Plaintiff Has Not Met Its Burden Regarding "Unforeseen Circumstances."**

To meet the burden of proof on summary judgment, Plaintiff must show that there is no genuine issue of material fact that the sale of the Snow Forest Home was not by "reason of

---

[36] Pl. Motion at ¶¶ 3, 17; Def. Motion at ¶ 9

[37] 26 C.F.R. § 1.121-3(e).

[38] *Id.* (emphasis added).

[39] 26 C.F.R. § 1.121-3(e)(2) (emphasis added).

[40] *Id.* As the C.F.R. notes, this list is not exclusive, and relevant authorities "may designate other events or situations as unforeseen circumstances." *Id.* at § 1.121-3(e)(3).

6

unforeseen circumstances." In other words, Plaintiff must show there is no dispute that the primary reason for the sale could reasonably have been anticipated by the Fortes before occupying the Snow Forest Home.

Plaintiff argues that the Fortes cannot rely on the "unforeseen circumstances" provision because when the Fortes moved into the Snow Forest Home, they "were aware of the precarious financial position they were in."[41] Plaintiff claims that the Fortes further exacerbated their financial difficulties by purchasing Lot 3 the month they moved into the Snow Forest Home.[42] Plaintiff likens this case to *Chiarito v. Commissioner*, T.C. Summ.Op. 2010-149, 2010 WL 3981955 (T.C. Oct. 6, 2010).[43] But *Chiarito* is not binding on this court[44] and is distinguishable from the present case.

In *Chiarito*, the court determined the taxpayers were not entitled to exclude from their income a gain resulting from the sale of a residence.[45] The taxpayers owned a catering business and purchased a home with the intent to build a second residence on the property which would have an industrial kitchen for their catering business.[46] However, the home was subject to certain regulations that prevented the taxpayers from building the second residence with the industrial kitchen.[47] In reviewing whether the taxpayers could properly exclude the gain from their income,

---

[41] Pl. Motion at 8.

[42] *Id.*

[43] *Id.*

[44] *Chiarito* is published under 26 U.S.C. § 7463 which provides that the case "shall not be reviewed in any other court and shall not be treated as a precedent for any other case."

[45] *Chiarito*, 2010 WL 398195 at *1.

[46] *Id.*

[47] *Id.*

7

the court made multiple determinations beyond the fact that the taxpayers knew of their financial difficulties.[48] For instance, the court determined that (1) that the taxpayers knew they had a need for an industrial kitchen over one year before purchasing the new home, (2) they were "well aware" of the financial losses the restaurant had sustained in the previous three years, (3) they learned of their inability to build a second residence on the property after they sold the previous home, and (4) there was evidence the sale of the home was attributed to their preference for the other home, all precluding their ability to exclude the gain from their gross income based on "unforeseen circumstances."[49] In short, the court made multiple fact findings that went beyond general financial difficulty.

      Plaintiff's argument is that because the Fortes "were aware of their financial difficulties" and made those difficulties worse by purchasing Lot 3, they cannot claim it was unforeseeable they would sell the home prior to living in it for two years.[50] However, beyond addressing that the Fortes were in financial trouble, Plaintiff does not address how the Fortes could reasonably have anticipated that they would not receive the full sale price of the Windsong Home prior to moving into the Snow Forest Home. There remains a genuine dispute of material fact as to whether the Fortes could reasonably have anticipated that they would not collect the remaining seller finance notes and that this would further exacerbate the Fortes' financial problems, forcing them to sell the Snow Forest Home in under two years.

---

[48] *Id.* at *2.

[49] *Id.* at *3.

[50] Pl. Motion at 9.

8

A reasonable fact finder might also agree with IRS Agent Carlile's finding that the Fortes qualified for the partial exclusion.[51] Plaintiff disputes the weight of Carlile's report and argues the court should not consider it per Federal Rule of Evidence 408 and Federal Rule of Civil Procedure 56(c)(2).[52] But Plaintiff has not identified any record facts establishing that Carlile's work is subject to Rule 408 or that the court should not consider the report under Federal Rule of Civil Procedure 56(c)(2).[53] The court does not make any trial admissibility decision here, but notes that the Plaintiff's failure to support its exclusion argument with facts necessarily precludes summary judgment.

For the reasons discussed above, Plaintiff's motion is denied.

### b. The Fortes Have Not Met Their Burden to Show "Unforeseen Circumstances."

To meet their burden, the Fortes must show that there is no genuine issue of material fact that the sale of the Snow Forest Home was because of unforeseen circumstances, meaning they could not reasonably have anticipated the events leading to the sale prior to occupying the Snow Forest Home. The Fortes argue that it was unforeseeable that they would be defrauded and not receive the full sale proceeds from the buyers of the Windsong Home.[54] They contend that they

---

[51] *See* Carlile Report, ECF No. 40-3 at 17–33.

[52] Pl. Opp. at 2.

[53] Defendants argue that they "are not aware of any invocation of Rule 408" during the time Carlile reviewed their tax assessments and made certain conclusions. *See* Def. Reply at 3.

[54] Def. Opposition at 8–10; Def. Motion at 12–13. The Fortes also make arguments regarding title to the Snow Forest Home. *See* Def. Motion at 14–18. Because there is a dispute of fact as to the circumstances surrounding the purpose of the sale of the home, the court does not address these arguments.

9

suffered a "devastating financial blow" after moving into the Snow Forest Home and "that they were victims of a financial crime."[55]

It is undisputed that the Fortes were already experiencing financial problems in 2005 prior to moving into the Snow Forest Home.[56] But it is disputed when they realized they would not be able to collect the remaining $695,000 in holdbacks from the buyers of the Windsong Home.[57] Mr. Forte's testimony alludes to trying to collect money from the buyers,[58] but the record does not allow the court to conclude as a matter of law that the Fortes did or did not realize the full extent of the fraud against them until *after* they moved into the Snow Forest Home in December 2005.

Therefore, the Fortes have not met their burden, and they are not entitled to summary judgment as to a partial exclusion from their income from the sale of the Snow Forest Home.

### B. The Court Denies Defendants' Motion Requesting an Additional Basis for $144,150.02 of Furniture Sold in the Windsong Home.

Defendants ask the court to determine they are entitled to reduce the amount of their taxable gain from the 2005 sale of the Windsong Home by the amount they paid for furnishings sold with the home.[59] However, Defendants fail to cite to any authority that they are entitled to the relief they request.[60] To prevail on summary judgment, a movant must show not just that

---

[55] Def. Reply at 6.

[56] Def. Opposition at ¶ 4 ("**Undisputed** that Fortes were experiencing a degree of financial stress in 2005.").

[57] *See id.*; *see also* Forte Dep. at 33:4–23, 39:20–40:12, 42:6–7.

[58] *See* Forte Dep. at 39:20–22.

[59] Def. Motion at 3, 18.

[60] *Id.* at 18; Def. Reply at 7.

there is no genuine issue of material fact, but also that they are "entitled to judgment as a matter of law."[61] Accordingly, their motion as to this claim is denied.[62]

## ORDER

For the reasons stated in this Memorandum Decision and Order, the parties' cross-motions for partial summary judgment[63] are both DENIED.

Signed June 21, 2021.

BY THE COURT

_____
David Barlow
United States District Judge

---

[61] Fed. R. Civ. P. 56(a).

[62] *See Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (noting that "unspecific, undeveloped, and unsupported" arguments are waived and need not be considered).

[63] Pl. Motion, ECF No. 39; Def. Motion, ECF No. 40.